■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES R. PINE, Appellant. [919 NYS2d 564]—

McCarthy, J.

During a violent incident, defendant and codefendant Michael Deyo caused injuries to the victim that ultimately resulted in the victim's death. An indictment charged defendant with manslaughter in the first degree and assault in the first degree, alleging that he, either as principal or acting in concert with Deyo, struck the victim with a metal pipe, punched him in the head and stomped on his head.[1] A jury convicted defendant of both charges. County Court imposed concurrent sentences of 25 years to life in prison, followed by five years of postrelease supervision. Defendant appeals.

The verdict was supported by legally sufficient evidence and not against the weight of the evidence. At trial, Deyo and defendant testified similarly regarding the beginning of the incident, but provided vastly different versions of the critical final assault. The victim, who previously dated defendant's girlfriend, called defendant from the girlfriend's apartment. Defendant placed a metal pipe in the back seat of his car and invited Deyo to accompany him to the apartment. Upon arriving, they discovered the victim ransacking the apartment. The victim then lunged at them, a struggle ensued and all three fought, tumbling down two flights of stairs during the fight. The victim then left the building and ran down the road. Deyo chased the victim, while defendant retrieved the pipe from his car. Realizing that the victim was leaving, defendant then got in his car, picked up Deyo, and followed the victim to a house two tenths of a mile down the road. Defendant testified that Deyo was extremely angry at the victim. Deyo testified that he told defendant that the situation should end and the police could handle things. He also testified that defendant almost hit the victim with the car, but the victim fled to the porch of a nearby house. Defendant testified that he tried to subdue the victim until police arrived, but the victim fought with him and they rolled around on the ground, at which time Deyo appeared with

---

**1.** Deyo pleaded guilty to assault in the first degree. He is separately appealing his judgment of conviction and the denial of his motion pursuant to CPL 440.10.

the pipe and hit the victim over the head multiple times. Defendant testified that he then took the pipe from Deyo and placed it in his trunk.

Contrarily, Deyo testified that, upon arriving at the house, he called 911 and requested police assistance. He testified that he saw defendant pull the victim off the porch, stomp on him, punch and slap him, then retrieve the pipe and hit him with it directly on the head numerous times. Deyo stated that he never had contact with the pipe or the victim at the house. Witnesses who arrived at the house saw defendant apparently placing something into his trunk, as well as slapping the victim, whereas they saw Deyo on his cellular telephone away from the house. The victim's blood was discovered on the sole and laces of defendant's shoes, but no blood was on Deyo's boots. It is undisputed that the victim died as a result of blunt force trauma to his head.

Viewed in a light most favorable to the People, Deyo's testimony and portions of defendant's testimony constitute legally sufficient evidence of both crimes (see People v Terk, 24 AD3d 1038, 1039-1040 [2005]). Defendant's argument essentially distills to an assertion that Deyo's testimony should be rejected, but the jury was properly permitted to decide what testimony it would believe. It appears that the jury believed Deyo's testimony that defendant hit the victim with the pipe multiple times. Giving deference to the jury's credibility determinations—obviously in favor of Deyo and against defendant—defendant's intent to cause serious physical injury can be inferred from his actions and the surrounding circumstances (see People v Steinberg, 79 NY2d 673, 682 [1992]; People v Terk, 24 AD3d at 1039). Even if the jury accepted that Deyo hit the victim with the pipe, it could have determined that defendant was guilty because he acted in concert with Deyo and intentionally aided him with the intent to cause serious physical injury by bringing the pipe, driving Deyo from the apartment to the house, hitting the victim and continually pushing the victim down to keep him on the ground (see People v Weiner, 226 AD2d 757, 758 [1996]). Viewing the evidence in a neutral light, and accepting the jury's credibility determinations, the verdict was not against the weight of the evidence (see People v Terk, 24 AD3d at 1040).

County Court did not err in refusing to charge the jury with the defense of justification. A defendant is not entitled to such a charge where no reasonable view of the evidence would support the elements of the defense (see People v Reynoso, 73 NY2d 816, 818 [1988]; People v Ryan, 55 AD3d 960, 963 [2008]). Although

a person privileged to be in an apartment may use physical force to prevent or terminate another person from committing a criminal trespass, burglary or other offense on the premises (*see* Penal Law § 35.20), under this provision defendant would only have been justified in using force on the premises of the girlfriend's apartment building. Once the victim fled from the apartment, defendant could not reasonably believe that force was necessary to prevent or terminate the commission of a burglary or criminal trespass, and the justification for the use of force ceased (*see People v Lugo*, 291 AD2d 359, 359 [2002], *lv denied* 98 NY2d 699 [2002]).

Defendant also contends that he was justified in using force to effect the arrest of the victim for crimes he committed in the apartment (*see* Penal Law § 35.30 [4]).[2] County Court correctly determined that the evidence could only be interpreted such that defendant was responsible for the use of deadly force— either as a principal or accomplice—or was not in any way responsible. Deadly force is only justified in effecting an arrest for certain listed crimes (*see* Penal Law § 35.30 [4] [b]) or where the defendant reasonably believes that such force is necessary to "[d]efend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of deadly physical force" (Penal Law § 35.30 [4] [a]). The victim did not commit any of the listed crimes, making that subdivision inapplicable. The court appropriately determined that the evidence did not support a reasonable belief on defendant's part that he was defending himself from the imminent use of deadly force by the victim. Defendant testified that the victim, when leaving the apartment building, threatened that his friends from a nearby city would get defendant and that the victim would get a gun from his car. Defendant testified that these statements caused him to retrieve the pipe from his car at the apartment building. Even so, once the victim left that property on foot, under no view of the evidence could defendant have reasonably believed that the victim would imminently use deadly force against him (*see People v Grady*, 40 AD3d 1368, 1371 [2007], *lv denied* 9 NY3d 923 [2007]). Accordingly, the court properly determined that the jury would either view the evidence to find that defendant was not guilty or that he was guilty and not justified in using deadly force against the victim. Thus, defendant was not entitled to a justification charge.

Defendant was not deprived of a fair trial by prosecutorial

---

**2.** While the statute also justifies the use of force to prevent an escape from custody (*see* Penal Law § 35.30 [4]), the victim was never in custody until after the final assault.

misconduct. He argues that the People improperly threatened several witnesses with incarceration if they did not rewrite their statements. When the police discover that individuals who have supplied statements may have provided incomplete or inaccurate information, the police may properly seek further statements and inform the individuals of the potential criminal consequences of providing false statements. The police did so here, and defendant used these circumstances to effectively cross-examine the individuals who changed their statements. Additionally, the prosecutor did not vouch for Deyo's credibility on summation, he merely responded to defense counsel's attacks on Deyo's testimony and character. Overall, the summation contained reasonable responses to the defense summation and fair comment on the evidence (see People v Wagner, 72 AD3d 1196, 1198 [2010], lv denied 15 NY3d 779 [2010]).

The sentence imposed was unauthorized, and must be modified. County Court stated that it was sentencing defendant, as a second felony offender, to concurrent terms of 25 years to life in prison, followed by five years of postrelease supervision. The court stated that this was the maximum sentence allowed by law, and was justified by defendant's criminal history and his actions in pursuing and attacking the victim in a heinous manner. While we do not find the imposition of the maximum sentence to be harsh or excessive, the sentence imposed was greater than the statutory maximum. The court was required to impose a determinate term of imprisonment of at least eight years and not more than 25 years (see Penal Law § 70.02 [1] [a]; § 70.06 [6] [a]). We need not remit for resentencing but may instead impose a sentence authorized by statute (see People v LaSalle, 95 NY2d 827, 829 [2000]). Consistent with County Court's indicated intent to impose the maximum sentence (cf. People v Warner, 69 AD3d 1052, 1054 [2010], lv denied 14 NY3d 894 [2010]; People v Assadourian, 19 AD3d 207, 208 [2005], lv denied 5 NY3d 785 [2005]), we sentence defendant to concurrent terms of 25 years in prison for each count, to be followed by five years of postrelease supervision.[3]

We have reviewed defendant's remaining contentions and find them to be without merit.

Spain, J.P., Stein, Garry and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law, by vacating the sentences imposed; defendant is sentenced to concurrent prison terms of 25 years for each count, to be followed by five years of postrelease supervision; and, as so modified, affirmed.

---

3. We note that this sentence is consistent with the sentence and commitment form, which differed from County Court's pronouncement as reflected in the sentencing transcript.