*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   October 30, 2014                    104646
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

            v                              MEMORANDUM AND ORDER

WILLIAM ROBINSON,
                    Appellant.
_____


Calendar Date:   September 4, 2014

Before:   Peters, P.J., Stein, Garry, Lynch and Devine, JJ.

_____


        Timothy S. Brennan, Schenectady, for appellant.

        Robert M. Carney, District Attorney, Schenectady (Gerald A. Dwyer of counsel), for respondent.

_____


Devine, J.

        Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered August 24, 2011, upon a verdict convicting defendant of the crime of assault in the first degree.

        After leaving his sister's residence, the victim was approached on the street by two unknown men, one of whom repeatedly slashed the victim in the face with a box cutter. Approximately one month later, the victim observed defendant walking down a street and flagged down a police officer, showed the officer a police incident report detailing the attack and provided a description of the assailant.  Shortly thereafter, defendant, who matched the victim's description, was detained on the street by another police officer and produced a box cutter that appeared to have dried blood on the blade.  The victim

confirmed to the police officers that defendant was the individual who had attacked him.

Defendant was indicted on two counts of assault in the first degree and, following a jury trial, convicted of one count. Defendant's posttrial motion to set aside the verdict was denied and County Court sentenced defendant, as a second felony offender, to 10 years in prison, followed by five years of postrelease supervision. Defendant now appeals.

Initially, defendant argues that the jury's verdict was not supported by legally sufficient evidence and was against the weight of the evidence. A verdict is supported by legally sufficient evidence when "there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (People v Bleakley, 69 NY2d 490, 495 [1987]; see People v Johnson, 24 AD3d 803, 804 [2005]). The People were required to prove, beyond a reasonable doubt, that defendant, "[w]ith intent to cause serious physical injury[,] . . . cause[d] such injury . . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). Specifically, defendant asserts that the People failed to prove the elements of intent and serious physical injury and, further, failed to disprove his justification defense.

The victim testified that defendant approached him and asked "what's poppin' Blood" and then, without provocation, slashed his face repeatedly with a box cutter. Conversely, defendant testified that the victim and another individual came up to him and asked how much money he had on him. Defendant further averred that he warned the men to "back up" and pulled a box cutter out of his pocket and, after the victim struck defendant in the head with a metal pipe, defendant swung outward with the box cutter and slashed the victim in the face. The parties did stipulate during trial that the blood residue found on defendant's box cutter was that of the victim. Defendant's fiancee, Ericka Ferguson, took the stand in an attempt to corroborate defendant's version of the incident, however, her credibility was greatly diminished when the People inquired about telephone conversations that she had with defendant while he was

detained in jail following his arrest, during which they attempted to fabricate a different justification defense. In particular, after the People had to refresh her recollection several times during cross-examination, Ferguson eventually conceded that she and defendant concocted a false version of the incident in which she, defendant and their young child were approached by a group of five men, including the victim who was wielding a box cutter, during a robbery attempt, forcing defendant to wrestle the instrument away from the victim to defend himself and his family.

As far as the victim's injuries are concerned, the victim's treating physician testified that the lacerations to the victim's cheek, nose and eyebrow required 29 external stitches and four internal stitches and left significant permanent scarring, which the jury observed during the victim's testimony and properly found constituted "'serious and protracted disfigurement'" (People v Powell, 101 AD3d 1369, 1370 [2012], lv denied 21 NY3d 1019 [2013], quoting Penal Law § 10.00 [10]; compare People v Brown, 100 AD3d 1035, 1035-1036 [2012], lv denied 20 NY3d 1009 [2013]; People v Gray, 30 AD3d 771, 772-773 [2006], lv denied 7 NY3d 848 [2006]). Viewing this evidence in a light most favorable to the People, we find that it was legally sufficient to result in defendant's conviction (see People v Ramos, 19 NY3d 133, 136 [2012]; People v Jau Kud Su, 239 AD2d 703 [1997], appeal denied 90 NY2d 940 [1997]). Further, although it was provided with a justification defense instruction prior to its deliberations, the jury obviously rejected defendant's contention that the use of deadly physical force against the victim, who defendant maintained was the initial aggressor, was done in self-defense and found, instead, that defendant intended to cause serious physical injury to the victim (see People v Dale, 115 AD3d 1002, 1006 [2014]; People v Fisher, 89 AD3d 1135, 1137-1138 [2011], lv denied 18 NY3d 883 [2012]; People v Pine, 82 AD3d 1498, 1500 [2011], lv denied 17 NY3d 820 [2011]). Even if a different outcome would have been reasonable under the facts of this case, assessing the trial evidence in a neutral light and according great deference to the jury's credibility determinations, we find that the verdict was not contrary to the weight of the evidence (see People v Johnson, 107 AD3d 1161, 1162 [2013], lv denied 21 NY3d 1075 [2013]; People v Estella, 107 AD3d

1029, 1031 [2013], lv denied 21 NY3d 1042 [2013]; People v Mitchell, 57 AD3d 1308, 1309-1310 [2008]).

Defendant further asserts that County Court erroneously limited the jury's consideration of evidence of the victim's history of attempted armed robberies for impeachment purposes. Proof of a victim's previous crimes is admissible to impeach his or her credibility or — where a defendant was aware of prior, similar violent acts committed by the victim — for the purpose of demonstrating that the defendant's acts of self-defense were justified (see Matter of Robert S., 52 NY2d 1046, 1048 [1981]; People v Miller, 39 NY2d 543, 549-550 [1976]). Here, it is uncontroverted that defendant did not know the victim or have any awareness of the victim's previous robberies or other violent conduct. The victim's extensive criminal history was explored in great detail during cross-examination and, although defendant insisted that he resorted to use of his box cutter only after the victim attempted to rob him while armed with a metal pipe, we discern no error in County Court's instruction that the jury only consider the victim's crimes in making its credibility determinations and not as evidence that the victim had a propensity for violence (see People v Watson, 20 NY3d 1018, 1020 [2013]; People v DiGuglielmo, 258 AD2d 591, 592 [1999], lv denied 93 NY2d 923 [1999]), and we decline to grant defendant's request to modify the long-standing precedent on this issue.

Moreover, we find unavailing defendant's claim that his constitutional right to confront witnesses was violated when County Court ruled that the victim could refuse to answer questions regarding the nature of pending criminal charges against him in light of the victim's invocation of his 5th Amendment privilege against self-incrimination. During cross-examination, defense counsel was given great latitude in questioning the victim about his outstanding criminal charges, yet the court properly exercised its discretion when it limited the scope of such questions to those tending to affect the victim's credibility (see People v Siegel, 87 NY2d 536, 544 [1995]; People v Hickman, 60 AD3d 865, 866 [2009], lv denied 12 NY3d 916 [2009]).

Next, as to the argument that the victim's identification of defendant and the evidence that resulted from the improper detention and search of defendant should have been suppressed, we find such assertion to be without merit. After spotting his assailant on the street approximately one month after the attack, the victim stopped a nearby police officer to report that defendant had previously attacked him, showed the officer his facial lacerations and the police report detailing the assault and described defendant's skin coloring and clothing. Where, as here, a "complainant flags down a police officer and then points to the attacker[] on the street," it cannot be said that the initial identification of the defendant was anything other than spontaneous (People v Dixon, 85 NY2d 218, 223 [1995]). As the police officer subsequently observed a man matching the victim's description walking in the area where the victim had directed him, sufficient cause existed to warrant the detention and questioning of defendant (see People v Robinson, 101 AD3d 1245, 1245-1246 [2012], lv denied 20 NY3d 1103 [2013]; People v Rose, 72 AD3d 1341, 1344-1345 [2010], lv denied 16 NY3d 745 [2011]), and the police officer's placement of defendant in handcuffs in an effort to promote his personal safety was proper under the circumstances (see People v Stroman, 107 AD3d 1023, 1024 [2013], lv denied 21 NY3d 1046 [2013]; People v Terry, 2 AD3d 977, 978-979 [2003], lv denied 2 NY3d 746 [2004]). Contrary to defendant's insistence that the victim's confirmatory identification — made while defendant was placed in handcuffs — was improper, the record reveals that the victim's identification was free from any undue suggestion or prodding by the police officers (see People v Wicks, 73 AD3d 1233, 1235 [2010], lv denied 15 NY3d 857 [2010]; People v Mathis, 60 AD3d 1144, 1146 [2009], lv denied 12 NY3d 927 [2009]).

Nor do we determine that County Court erred in denying, following a hearing, defendant's CPL 330.30 motion to set aside the verdict based upon the discovery of new evidence. The evidence offered in support of the motion was highly contradictory and included an affidavit from a relative of the victim who averred, among other things, that the victim admitted to having attempted to rob defendant, but was unsuccessful in doing so. The witness, however, later recanted the statement. A second affidavit came from a prison inmate who similarly claimed

that the victim had admitted instigating the incident with defendant. However, despite adjournments of the hearing on defendant's application, the inmate witness, who was then subject to pending criminal charges, was not made available for cross-examination. Ultimately, as the newly discovered evidence was proffered to impeach witness testimony or otherwise contradict evidence presented during trial, we cannot agree with defendant's assertion that the court's denial of the motion was improper (see People v Crawson, 56 AD3d 1051, 1053 [2008], lv denied 12 NY3d 757 [2009]; People v Bowers, 4 AD3d 558, 560 [2004], lv denied 2 NY3d 796 [2004]; People v Hayes, 295 AD2d 751, 752 [2002], lv denied 98 NY2d 730 [2002]).

Defendant's remaining arguments have been considered and found to be lacking in merit.

Peters, P.J., Stein, Garry and Lynch, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court