People v Harris (2020 NY Slip Op 04431)





People v Harris


2020 NY Slip Op 04431


Decided on August 6, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 6, 2020

110194

[*1]The People of the State of New York, Respondent,
v
Coreen Harris, Appellant.

Calendar Date: June 10, 2020

Before: Garry, P.J., Clark, Mulvey, Aarons and Colangelo, JJ.


Theresa M. Suozzi, Saratoga Springs, for appellant.
P. David Soares, District Attorney, Albany (Jonathan P. Catania of counsel), for respondent.



Clark, J.
Appeal from a judgment of the Supreme Court (Breslin, J.), rendered June 13, 2017 in Albany County, upon a verdict convicting defendant of the crimes of assault in the first degree, assault in the second degree and criminal possession of a weapon in the third degree.
In 2016, based upon allegations that he attacked the victim with a filet knife, causing wounds to the victim's nose, cheek and chest, defendant was charged with assault in the first degree, attempted assault in the first degree, assault in the second degree and criminal possession of a weapon in the third degree. Following a jury trial,[FN1] defendant was convicted of assault in the first degree, assault in the second degree and criminal possession of a weapon in the third degree. Defendant was thereafter sentenced, as a second felony offender, to a prison term of 15 years, followed by five years of postrelease supervision, on his conviction for assault in the first degree and to lesser concurrent prison terms on his remaining convictions. Defendant appeals.
Defendant argues that the jury verdict is not supported by legally sufficient evidence and is against the weight of the evidence. However, defendant's legal sufficiency challenge is not preserved for our review, as defendant did not raise the arguments upon which he now relies when he moved for a trial order of dismissal (see People v Daniels, 174 AD3d 955, 956 [2019], lvs dismissed 34 NY3d 950, 952 [2019]; People v Vanderhorst, 117 AD3d 1197, 1198 [2014], lv denied 24 NY3d 1089 [2014]). Nevertheless, during the course of this Court's weight of the evidence review, we necessarily determine whether each element of the crimes were proven beyond a reasonable doubt and, because defendant raised a justification defense at trial, whether the People proved that defendant's conduct was not justified (see People v Hernandez, 165 AD3d 1473, 1473 [2018]; People v Vanderhorst, 117 AD3d at 1198).
As relevant here, to obtain a conviction for assault in the first degree, the People bear the burden of proving that, "[w]ith intent to cause serious physical injury to another person, [the defendant] cause[d] such injury to such person
. . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). For a conviction of assault in the second degree, the People must prove that, "[w]ith intent to cause physical injury to another person, [the defendant] cause[d] such injury to such person . . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). For a conviction of criminal possession of a weapon in the third degree, the People have to prove that the defendant was previously convicted of a crime and that he or she has committed the offense of criminal possession of a weapon in the fourth degree (see Penal Law § 265.02 [1]), which requires, as relevant here, proof that the defendant knowingly "possesse[d] any dagger, dangerous knife, dirk, . . . razor . . . or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another" (Penal Law § 265.01 [2]). A dangerous instrument includes "any instrument . . . which, under the circumstances in which it is used, . . . is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]).
The evidence, including defendant's own testimony, indisputably established that defendant slashed the victim in the face, causing lacerations across the victim's nose and right cheek, and stabbed the victim in the chest with a kitchen filet knife. At trial, defendant asserted that he acted in self-defense and that, therefore, his use of the knife was justified. Given defendant's invocation of the justification defense, the People bore the burden of proving beyond a reasonable doubt that defendant was not justified in using deadly physical force against the victim (see People v Umali, 10 NY3d 417, 425 [2008], cert denied 556 US 1110 [2009]; People v Every, 146 AD3d 1157, 1161 [2017], affd 29 NY3d 1103 [2017]). A defendant is justified in using deadly physical force when he or she is not the initial aggressor and he or she reasonably believes that such force is necessary to defend himself or herself from what he or she reasonably believes to be the use or imminent use of deadly physical force (see Penal Law § 35.15 [1], [2]; People v Every, 146 AD3d at 1161; People v Fisher, 89 AD3d 1135, 1137 [2011], lv denied 18 NY3d 883 [2012]).
The evidence established that defendant and the victim were the only two people present during the altercation that led to the victim's injuries. The victim testified that, in January 2016, he and his girlfriend went to dinner at the home of defendant and defendant's girlfriend — who was the mother of the victim's girlfriend. The victim stated that both women left to buy cigarettes and that, thereafter, without provocation, defendant attacked him with a filet knife, slashing him in the face and stabbing him in the chest. The victim testified that he grabbed a chair and placed it between himself and defendant, but that defendant nonetheless continued to advance toward him, threatening to kill him. According to the victim, the women arrived home in the middle of the attack, at which point defendant slipped out of the house. The victim and the victim's girlfriend testified that they left the house and sought police intervention and medical assistance. Photographs taken of the scene, as well as police testimony regarding the state of the home shortly after the incident, were consistent with the victim's version of events.
As evidence of defendant's motive and intent, the victim and the victim's girlfriend testified to an incident that had taken place over Easter in 2015, which had led to months of estrangement from defendant and defendant's girlfriend. Specifically, they testified that the victim had gotten into a physical altercation with his girlfriend's sister, which prompted an angry and threatening visit from defendant and defendant's girlfriend.[FN2] The People introduced evidence that defendant fled the area after the incident and was ultimately apprehended, with a broken ankle, in Queens County by a United States Marshal.
Defendant testified on his own behalf and offered a different version of events than the victim, stating that it was the victim who had initiated the altercation and had first attacked him with a knife. Defendant asserted that he broke his ankle during a physical struggle with the victim, that he grabbed the filet knife off the kitchen counter and, acting in self-defense, cut and stabbed the victim. However, the photographs depicting the aftermath of the scene, as well as the police testimony describing the state of the home after the incident, were inconsistent with a struggle having taken place as described by defendant. Defendant's testimony was further undercut by a recorded jail phone call, which was admitted into evidence and arguably indicated that defendant had actually broken his ankle sometime after he fled to Queens County.
Inasmuch as defendant's convictions hinged on the jury's credibility determinations, a different verdict would not have been unreasonable (see People v Dale, 115 AD3d 1002, 1006 [2014]). However, the jury clearly resolved the credibility issues against defendant and in favor of the People. Viewing the evidence in a neutral light and according deference to the jury's credibility determinations (see People v Pine, 126 AD3d 1112, 1114 [2015], lv denied 27 NY3d 1004 [2016]), we find that the weight of the evidence supports the jury's rejection of defendant's justification defense, as well as its determination that defendant knowingly possessed the filet knife with an intent to use it unlawfully — that is, to injure the victim (see Penal Law §§ 120.05 [2]; 265.01 [2]; People v Robinson, 121 AD3d 1405, 1407 [2014], lv denied 24 NY3d 1221 [2015]; People v Dale, 115 AD3d at 1006).[FN3]
We next turn to the question of whether the victim's two facial scars constitute a serious physical injury, so as to support defendant's conviction for assault in the first degree.[FN4] As relevant here, a serious physical injury includes a "physical injury . . . which causes . . . serious and protracted disfigurement" (Penal Law § 10.00 [10]). To qualify as a serious disfigurement, the scars must be "objectively 'distressing or objectionable'" to the reasonable observer (People v Stewart, 18 NY3d 831, 832 [2011], quoting People v McKinnon, 15 NY3d 311, 315 [2010]). The nature of the injury is not the only relevant consideration; rather, "the injury must be viewed in context, considering its location on the body and any relevant aspects of the victim's overall physical appearance" (People v McKinnon, 15 NY3d at 315).
The testimonial, photographic and documentary evidence demonstrated that the victim sustained a laceration to his right cheek that was approximately four centimeters long, as well as a similarly sized laceration transversing the tip of his nose to his right nostril. Both lacerations were sutured by a plastic surgeon. Although the evidence clearly demonstrated the locations of the lacerations and their size prior to and immediately after suturing, the record is imprecise as to the extent and appearance of any resulting facial scars. The People did not introduce a photograph depicting the victim's nose and right cheek at the time of trial or any time after the sutures had been removed and the lacerations healed (compare People v Andrews, 127 AD3d 1417, 1419-1420 [2015], lv denied 25 NY3d 1159 [2015]). Further, although the physician who treated the victim testified that the victim was expected to have facial scars and the victim did in fact display facial scars to the jury, the People failed to make a contemporaneous record of what the jury observed, so as to demonstrate the extent and appearance of those scars (see People v McKinnon, 15 NY3d at 316; People v Marshall, 162 AD3d 1110, 1114 [2018], lv denied 31 NY3d 1150 [2018]). Moreover, despite their prominent locations, there is no indication that the relatively small facial lacerations produced jagged, uneven or "unusually disturbing" scars (People v McKinnon, 15 NY3d at 316; compare People v Andrews, 127 AD3d at 1419-1420). In the absence of a photograph depicting the victim's facial scars or an on-the-record description of the victim's scars at the time of trial, we cannot conclude that the record evidence supports a finding of serious disfigurement (see People v McKinnon, 15 NY3d at 316; People v Marshall, 162 AD3d at 1114; compare People v Andrews, 127 AD3d at 1419-1420; People v Robinson, 121 AD3d at 1407; People v Johnson, 23 AD3d 686, 687-688 [2005], lv denied 6 NY3d 895 [2006]). Accordingly, we are constrained to conclude that defendant's conviction for assault in the first degree is not supported by the weight of the evidence (see People v Marshall, 162 AD3d at 1113-1114).
The evidence credited by the jury nonetheless supports the conclusion that defendant intended to inflict serious physical injury upon the victim and that defendant used the filet knife in a manner that could have resulted in serious physical injury to the victim (see generally People v Pine, 126 AD3d at 1114 & n 3). Indeed, the victim testified that defendant threatened to kill him during the attack and defendant's intent can otherwise be inferred from the circumstances and his conduct (see People v Pine, 126 AD3d at 1114; People v Brown, 100 AD3d 1035, 1037-1038 [2012], lv denied 20 NY3d 1009 [2013]). As such, we reduce defendant's conviction of assault in the first degree to the lesser included offense of attempted assault in the first degree, vacate the sentence imposed thereon and remit the matter to Supreme Court for resentencing on the reduced count (see Penal Law §§ 120.05 [2]; 120.10 [1]; CPL 470.20 [4]; People v Marshall, 162 AD3d at 1114).
Defendant's remaining contentions do not require extended discussion. We are unpersuaded by defendant's assertion that Supreme Court abused its discretion in fashioning a Sandoval compromise, which permitted the People to cross-examine defendant as to the existence of his two prior class E felony convictions, the dates of such convictions and the fact that the convictions arose out of Queens County; such compromise ruling properly balanced defendant's right to a fair trial against the People's right to impeach defendant's credibility (see People v Anthony, 152 AD3d 1048, 1051 [2017], lvs denied 30 NY3d 978, 981 [2017]). Defendant's further contention that he was entitled to a temporary lawful possession charge is unpreserved for our review (see CPL 470.05 [2]; People v Adams, 90 AD3d 1508, 1509 [2011], lv denied 18 NY3d 954 [2012]) and, in any event, wholly without merit (see People v Britton, 27 AD3d 1014, 1015 [2006], lv denied 6 NY3d 892 [2006]). Finally, given that defendant's conviction on the top count of the indictment has been reduced and the matter must be remitted to Supreme Court for resentencing, defendant's contention that his sentence was harsh and excessive is academic (see People v Brown, 100 AD3d at 1037-1038; People v Molano, 70 AD3d 1172, 1177 [2010], lv denied 15 NY3d 776 [2010]). Defendant's remaining arguments, to the extent not expressly addressed herein, have been reviewed and found to be without merit.
Garry, P.J., Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is modified, on the facts, by reducing defendant's conviction for assault in the first degree under count 1 of the indictment to attempted assault in the first degree; vacate the sentence imposed on said conviction and matter remitted to the Supreme Court for resentencing; and, as so modified, affirmed.



Footnotes

Footnote 1: A prior jury trial ended in a mistrial.

Footnote 2: Contrary to defendant's contention, Supreme Court did not abuse its discretion in allowing the People to elicit testimony regarding the Easter 2015 incident and defendant's threatening acts after the incident, as such testimony was relevant to establishing defendant's motive and intent, provided necessary background and context to the relationship between defendant and the victim and was more probative than prejudicial (see People v Pitt, 170 AD3d 1282, 1284 [2019], lv denied 33 NY3d 1072 [2019]).

Footnote 3: Outside the presence of the jury, defendant was arraigned on a special information alleging that he had been previously convicted of attempted criminal possession of a weapon in the third degree, a felony offense. Defendant admitted to that prior felony conviction (see CPL 200.50 [3] [a]), thereby elevating the offense of criminal possession of a weapon in the fourth degree to criminal possession of a weapon in the third degree (see Penal Law § 265.02 [1]).

Footnote 4: The evidence established that the victim's chest laceration was "not significantly deep" and that the knife did not penetrate the victim's chest cavity or injure any organs or blood vessels. Finding that the chest wound was not a serious physical injury and/or that defendant did not intend to inflict a serious physical injury by stabbing the victim in the chest, the jury acquitted defendant of the charge of attempted assault in the first degree and convicted him instead of assault in the second degree. Such conviction is amply supported by the weight of the evidence (see Penal Law § 120.05 [2]).