People v Contompasis (2025 NY Slip Op 00500)

People v Contompasis

2025 NY Slip Op 00500

Decided on January 30, 2025

Appellate Division, Third Department

Clark, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 30, 2025

CR-23-0274

[*1]The People of the State of New York, Respondent,
v
Alexander Contompasis, Appellant.

Calendar Date:November 18, 2024

Before: Garry, P.J., Egan Jr., Clark, Pritzker and Mackey, JJ.

Kathy Manley, Selkirk, for appellant.
Lee C. Kindlon, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Clark, J.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered November 17, 2022 in Albany County, upon a verdict convicting defendant of the crimes of assault in the first degree, attempted assault in the first degree (two counts), assault in the second degree and criminal possession of a weapon in the third degree.
On January 6, 2021, a group protesting the results of the 2020 Presidential Election gathered outside the State Capitol in the City of Albany. A group of counter-protestors gathered nearby, with defendant among them. Tension between the groups escalated to an all-out brawl in the early afternoon and, in the aftermath, law enforcement discovered that two protestors had suffered stab wounds. The two victims provided descriptions of the assailant and, with the aid of surveillance cameras in the vicinity of the Capitol, law enforcement pursued and stopped defendant's vehicle as he left the scene. Defendant was arrested, and he was arraigned on a felony complaint the following day. He was later charged in a multicount indictment with one count of assault in the first degree (count 1) (see Penal Law § 120.10 [1]) and one count of attempted assault in the first degree (count 2) (see Penal Law §§ 110.00, 120.10 [1]) as to the first victim, with one count of attempted assault in the first degree (count 3) and one count of assault in the second degree (count 4) (see Penal Law § 120.05 [2]) as to the second victim, and with criminal possession of a weapon in the third degree (count 5) (see Penal Law § 265.02 [1]). Following a jury trial where defendant raised a justification defense as to counts 1 through 4,[FN1] defendant was found guilty as charged. Supreme Court sentenced defendant to an aggregate prison term of 20 years, to be followed by five years of postrelease supervision. Defendant appeals.
To address defendant's challenge to the weight of the evidence, "we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Barzee, 190 AD3d 1016, 1017-1018 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]; see People v Dillon, 231 AD3d 1352, 1353 [3d Dept 2024]). "In making this assessment, great deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Taylor, 207 AD3d 806, 807 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 39 NY3d 942 [2022]). As relevant here, "[a] person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or [*2]a dangerous instrument" (Penal Law § 120.10 [1]). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00).
On appeal, defendant poses no specific challenge to the elements underlying the crimes of which he was convicted but, rather, he argues that his convictions for counts 1 through 4 are contrary to the weight of the evidence because the People failed to disprove his justification defense. In any event, the evidence adduced at trial, including defendant's own testimony, established that defendant used a knife to inflict serious physical injury to the first victim, supporting his conviction for assault in the first degree (see Penal Law § 120.10 [1]), and that he used the knife in an attempt to inflict serious physical injury to the second victim, establishing his conviction for attempted assault in the first degree (see Penal Law §§ 110.00; 120.10 [1]). As to the justification defense, a defendant's use of deadly physical force [FN2] is justified in response to another person's use or imminent use of deadly physical force, unless a defendant knows that retreating would avoid the necessity of such force and ensure complete safety to himself, herself and others (see Penal Law § 35.15 [2] [a]; People v Wilkins, 216 AD3d 1359, 1361 [3d Dept 2023], lv denied 40 NY3d 1000 [2023]). Further, where a defendant alleges that he or she used physical force against another person in defense of himself, herself or a third party, such use of force is not justified when the defendant or the third party provoked the other person's conduct or when the defendant or the third party was the initial aggressor (see Penal Law § 35.15 [1] [a], [b]; People v Walker, 26 NY3d 170, 177 [2015]). At trial, it is the People's burden to "demonstrate beyond a reasonable doubt that the defendant did not believe deadly [physical] force was necessary or that a reasonable person in the same situation would not have perceived that deadly [physical] force was necessary" (People v Umali, 10 NY3d 417, 425 [2008], cert denied 556 US 1110 [2009]; see People v Graham, 215 AD3d 998, 1000 [3d Dept 2023], lv denied 40 NY3d 928 [2023]).
In support of his justification defense, defendant testified that he brought the knife to the protest because he believed that members of the Proud Boys, a political group, would be present. Defendant explained that he believed the group was violent and that his belief was heightened when he saw that some of the protestors were equipped with steel-toed boots, motorcycle gloves, sharpened sticks and flagpoles. He also noted that the first victim had a medic backpack and expressed a belief that this further reflected the protestors' intention to inflict violence. Defendant asserted that his friend, a counter-protestor depicted wearing a white puffy coat in the surveillance video, got into an argument with some protestors who were antagonizing [*3]him. According to defendant, the friend was soon surrounded by a group of protestors. When one of the protestors — the first victim's brother — tased defendant's friend,[FN3] defendant explained that he pulled out the knife and moved to protect his friend, but the first victim intercepted him by punching him and knocking him to the ground. Defendant testified that as he was on the ground, the first victim kept punching him to the point that he nearly blacked out. He asserted that he then began to swing the knife at the first victim to protect himself, causing the first victim to flee. Defendant stated that he then saw the second victim hitting a counter-protestor who was on the ground, so he used the knife against the second victim.
In addition to defendant's testimony and the testimony of the victims and various law enforcement witnesses, photographs and videos [FN4] were admitted into evidence. The videos show that, contrary to defendant's assertion, the protestors were backing away from defendant's friend as the friend continued a verbal altercation with the protestors. When the friend was tased, defendant, who was nearby watching the argument, joined the ensuing frenzy [FN5] and began swinging the knife at the protestors immediately. Further, photographs taken of defendant following his arrest contradict his claims about the extent of the harm inflicted upon him by the first victim. Had the jury credited defendant's version of events and found that use of deadly physical force was necessary and reasonable for defendant to protect himself or the other counter-protestors, a different verdict would not have been unreasonable. However, deferring to the jury's credibility determinations and viewing the evidence in a neutral light, including defendant's own admissions that he did not see either victim display or use a deadly weapon, we find that the weight of the evidence supports the finding that defendant did not use the knife as a reasonable response to a perceived deadly threat but, rather, did so with criminal intent (see People v Mamadou, 172 AD3d 1524, 1526 [3d Dept 2019], lv denied 33 NY3d 1106 [2019]; People v Harden, 134 AD3d 1160, 1161-1162 [3d Dept 2015], lv denied 27 NY3d 1133 [2016]). Consequently, we are satisfied that the verdict convicting defendant of assault in the first degree and attempted assault in the first degree is supported by the weight of the evidence.[FN6]
Next, defendant argues that the People failed to turn over certain discovery materials in a timely manner, rendering their certificate of compliance (hereinafter COC) illusory and invalidating their declaration of trial readiness. He contends that the People failed to declare readiness for trial before the speedy trial clock expired, and the indictment must therefore be dismissed. CPL article 245 imposes automatic disclosure requirements upon the People, and it incentivizes compliance by tying their discovery obligations with their trial readiness (see CPL 30.30 [5]; 245.50 [3]; People [*4]v Bay, 41 NY3d 200, 208 [2023]). As relevant here, the People are required to automatically disclose "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (CPL 245.20 [1]).[FN7] Among other things, these disclosures include any statements "made by persons who have evidence or information relevant to any offense charged or to any potential defense" (CPL 245.20 [1] [e]) and any information that tends to "impeach the credibility of a testifying prosecution witness" (CPL 245.20 [1] [k] [iv]). Once the People have met their automatic discovery obligations, they must file a COC, which "shall state that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL 245.50 [1]). The People's "statement of trial readiness must be accompanied or preceded by a [COC, filed in good faith,] with the disclosure requirements," and such statement triggers the trial court's duty to "make inquiry on the record as to their actual readiness" (CPL 30.30 [5]).
The People have a continuing duty to provide discoverable materials expeditiously, and they shall file a supplemental COC identifying any additional information (see CPL 245.50 [1]; 245.60). The People must also provide an explanation for the delayed disclosure (see People v Bay, 41 NY3d at 215).[FN8] Where a COC was filed in good faith after exercising due diligence and the disclosures were reasonable under the circumstances, the filing of a supplemental COC shall have no effect on the validity of the initial COC, though the court may issue an appropriate sanction as detailed in CPL 245.80 (see CPL 245.20 [1]; 245.50 [1]; People v Bay, 41 NY3d at 214). However, where the People fail to exercise due diligence before filing a COC, that COC and any related declaration of trial readiness are deemed invalid (see CPL 30.30 [5]; People v Bay, 41 NY3d at 212, 216). As such, where "the People did not file a proper COC and the speedy trial period has run," the only remedy is dismissal of the indictment (People v Bay, 41 NY3d at 214; see CPL 30.30 [5]; 245.50 [3]).
Although not defined within CPL article 245, "due diligence" refers to "a familiar and flexible standard that requires the People to make reasonable efforts to comply with statutory directives" (People v Bay, 41 NY3d at 211 [internal quotation marks and citation omitted]). The inquiry "is fundamentally case-specific, as with any question of reasonableness," and the statutory scheme does not set forth a strict liability standard or "require or anticipate a 'perfect prosecutor' " (id. at 212). "Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things, the efforts made [*5]by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id.; accord People v Williams, 224 AD3d 998, 999-1000 [3d Dept 2024], lv denied 41 NY3d 1021 [2024]).
Defendant's assertions revolve around the People's failure to timely disclose a statement given by the first victim's brother to law enforcement on the day of the protest, as well as disciplinary records for law enforcement officers who were on the People's witness list. Following defendant's June 2021 arraignment on the indictment, the People filed a COC and a declaration of trial readiness on July 8, 2021, asserting that they had complied with their automatic discovery obligations pursuant to CPL article 245. More specifically, the People asserted that they had provided defendant with a trove of discovery materials, including documents, photographs and video, through a digital file-sharing system.
In a letter dated August 18, 2021, defense counsel requested additional discovery, including the "[p]ersonnel records of all officers involved," among other things. The People responded on September 1, 2021, noting that defendant's request as written fell outside the scope of discovery; nevertheless, the People asserted that they had previously provided defendant with all known impeachment material for the law enforcement officers named in the People's witness list. In responding to the remainder of the discovery requests, the People stated that they had either already been fulfilled or fell outside the scope of discovery. The People did provide a supplemental disclosure regarding the criminal history of the second victim, and they filed a supplemental COC and again declared readiness for trial on September 9, 2021.
On September 13, 2021, defendant filed a motion alleging that the People had failed to disclose a plethora of discoverable material, and seeking to compel their disclosure, as well as a finding that the July 2021 COC was illusory due to the alleged discovery deficiencies. Among other things, defendant sought the disclosure of "statements or notes associated with [t]he comments made by" eight named individuals present at the scene on January 6, 2021, including the first victim's brother, as well as "any other person interviewed pursuant to this investigation." As relevant here, defendant also alleged that the People had failed to turn over the personnel files of "the officers involved in the arrest and investigation of this matter." In a response dated October 1, 2021, the People detailed, at length, the efforts undertaken to fulfill their statutory discovery obligations and to address defendant's additional requests. The People noted that they had kept an open line of communication [*6]with defense counsel since the inception of the case, and first provided discovery in February 2021.[FN9] The People also set forth the manner, reasons and dates for each subsequent disclosure of discovery materials. In addressing defendant's assertion that the People had failed to turn over statements by the various individuals, the People addressed each individual. Where a written statement existed, the People noted the date when the material had been disclosed. Where no written statement existed but a verbal statement was captured by an officer's body camera, the People noted the dates when the relevant video had been disclosed. However, in addressing this list, the People neglected to address the request as it pertained to the first victim's brother. As to the personnel records of law enforcement officers, the People repeated that they had disclosed all impeachment materials for the officers on the People's witness list.[FN10] Supreme Court denied defendant's motion in November 2021, finding that the People had complied with their discovery obligations and that the disclosures had been reasonable under the circumstances.
On or about January 26, 2022, defendant filed his omnibus motion, arguing, as relevant here, that the indictment should be dismissed because the People had failed to disclose information regarding an undercover officer and the personnel records for the law enforcement officers involved in the investigation. The People responded on February 1, 2022, asserting that CPL 245.20 (1) (d) allowed the People to withhold information about the undercover officer without a court order. The People asserted that they had complied with their discovery obligations and detailed the method and dates for each disclosure, including their responses to defendant's additional requests and materials that were redisclosed.[FN11] In March 2022, Supreme Court found that no discoverable material was outstanding and that the People had continued to exercise the requisite diligence in obtaining and disclosing discovery materials. The court also scheduled a hearing to address defendant's motion to suppress various evidentiary items.
At some point in August 2022, a new prosecutor took over the case, and she began to exercise her own due diligence to ensure that defendant had all required discovery materials. The new prosecutor reached out to defense counsel on August 30, 2022 to request a physical hard drive to provide counsel discovery materials in their entirety. When the hard drive was not received, the new prosecutor renewed that request on September 6, 2022, to no avail. On September 14, 2022, the new prosecutor turned over all of the discoverable materials in the People's possession, including all of the photographs, videos, lab results and documents prepared throughout the investigation. This disclosure also included an updated witness list, as well as the personnel files for the law enforcement officers included on said list. The People filed a supplemental COC [*7]and declared readiness for trial on the same date. Upon receiving additional personnel files on September 23, 2022, the People disclosed those materials, and they filed a supplemental COC and declared readiness for trial on September 27, 2022.
On that same date, defendant again moved to dismiss the indictment based on these belated discovery disclosures. Defendant averred that, through the September 2022 disclosures, the People had, for the first time, disclosed certain photographs of the victims' injuries, the criminal history of the first victim's brother, the second victim's medical records and the personnel records for the law enforcement officers on the People's witness list. On September 30, 2022, the People responded, noting that the photographs, criminal history and medical records that defendant purported to have received for the first time had all been previously disclosed in July 2021. In addressing defendant's assertions regarding the law enforcement personnel records, the People explained that a number of those records had also been provided through the July 2021 disclosure. However, as the new prosecutor had amended the witness list, the People provided personnel records for the officers on said list as soon as they were available. The People also detailed the efforts undertaken to provide defendant with discovery in July 2021, as well as the ongoing efforts underlying the additional disclosures. At the start of the trial, Supreme Court addressed defendant's motion on the record. During this appearance, the new prosecutor explained that she had opted to disclose the materials for every officer on the updated witness list in an abundance of caution, to ensure that defendant received all impeachment material required by CPL 245.20 (1) (k) (iv). Nevertheless, the People acknowledged that some of those materials had been disclosed for the first time and agreed that they would not proffer the testimony of the officers whose personnel records had been belatedly disclosed.[FN12]
With all of these discovery disclosures and the related motion practice in mind, the pivotal question before us is whether the People exercised due diligence (see CPL 245.20 [1]; 245.50 [1]; People v Bay, 41 NY3d at 214). In conducting such analysis, we are reminded that the Legislature did not intend to "require or anticipate a perfect prosecutor" to discharge the obligations imposed by CPL article 245 (People v Bay, 41 NY3d at 212 [internal quotation marks omitted]). We recognize that the materials subject to defendant's appellate challenge were, at varying points, specifically requested by defendant. However, we also acknowledge that the People undertook significant efforts to provide defendant with the discoverable materials in a diligent manner. Through the September 2021 motion, defendant sought disclosure of the statements of eight individuals, including the first victim's brother, among copious other discovery requests. In responding to that motion, the People [*8]addressed each and every request but overlooked the portion of the request that sought the statement of the victim's brother.[FN13] Defendant's request for law enforcement personnel files initially pertained to every officer involved in the investigation, and we note that the People's discovery obligations, as relevant here, only extend to those materials that either "relate to the subject matter of the case" (CPL 245.20 [1]) or that tend to "impeach the credibility of a testifying prosecution witness" (CPL 245.20 [1] [k]; see People v Garrett, 23 NY3d 878, 888-891 [2014]; People v Macaluso, 230 AD3d 1158, 1160 [2d Dept 2024], lv denied 42 NY3d 1036 [2024]; People v McCarty, 221 AD3d 1360, 1362 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]). Nevertheless, despite the overbroad request, the People asserted that they had already provided the personnel files for the officers who were on their witness list prior to filing the COC. When the new prosecutor updated the witness list, the People provided further personnel records either concurrently or soon after, as the materials became available.
Considering the Bay factors, the discoverable material involved herein was voluminous, with thousands of pages of documents, hundreds of photographs, and a significant amount of video footage, and the People turned over an overwhelming amount of discoverable material. Following each of defendant's requests for discovery or motions pertaining thereto, the People responded quickly. In doing so, the People either explained their reasoning for withholding some sought items (see e.g. CPL 245.20 [1] [b]), provided any missing items along with reasonable explanations for the belated disclosures or, when items had been previously disclosed, detailed such disclosures and, at times, redisclosed them. There is no dispute that discoverable material fell through the cracks. However, our review of the record leads us to conclude that these delayed disclosures are merely the result of a prosecutor who, having exercised due diligence, missed a few discoverable items. Under the particular circumstances of this case, we find that the disclosures were reasonable and that the People exercised due diligence before filing their initial COC and subsequent filings in good faith (see e.g. People v Williams, 224 AD3d at 1006-1007; compare People v Bay, 41 NY3d at 215-216).
Defendant's related speedy trial argument also fails. As defendant was charged with at least one felony, the People had six months within which to declare readiness for trial (see CPL 30.30 [1] [a]). Here, defendant was arraigned on a felony complaint on January 7, 2021, and the People filed their COC and declared readiness for trial on July 8, 2021. Although this would ordinarily place the People one day beyond the allotted six-month period, various executive orders occasioned by the COVID-19 pandemic tolled the speedy trial clock, as relevant here, between January 7, 2021 and May 27, 2021 (see Executive Order [A. Cuomo] [*9]No. 202.8 [9 NYCRR 8.202.8]; Executive Order [A. Cuomo] No. 202.87 [9 NYCRR 8.202.87]; Executive Order [A. Cuomo] No. 202.105 [9 NYCRR 8.202.105]). As excluding such period places the People's declaration well before the expiration of the six-month speedy trial clock, and the record is devoid of any allegation that any period of postreadiness delay should be charged to the People, we are satisfied that defendant's statutory speedy trial rights were not violated (see People v McCarty, 221 AD3d at 1363-1364).
Next, we turn to defendant's contention that Supreme Court abused its discretion when it denied his for-cause challenge to a potential juror because that juror was equivocal about her ability to be fair and impartial. "[W]hen potential jurors reveal knowledge or opinions reflecting a state of mind likely to preclude impartial service, they must in some form give unequivocal assurance that they can set aside any bias and render an impartial verdict based on the evidence" (People v Johnson, 94 NY2d 600, 614 [2000]; see CPL 270.20 [1] [b]; People v Everett, 231 AD3d 1296, 1302 [3d Dept 2024], lv denied ___ NY3d ___ [Dec. 17, 2024]). Here, the potential juror expressed her belief that, based on her experience working for the Department of Corrections and Community Supervision, victims sometimes receive less consideration than those convicted of crimes. In response to questions about her ability to be fair and impartial, the potential juror answered that she could, though she couched some of her answers with words like "think" or "believe." To the extent that defendant focuses on such terms, we note that "words like 'think' or 'try' are not talismanic words that automatically make a statement equivocal" (People v Shulman, 6 NY3d 1, 28 [2005] [internal quotation marks, ellipsis, brackets and citation omitted], cert denied 547 US 1043 [2006]). In any event, the potential juror provided unqualified and unequivocal responses to further questioning. Specifically, the potential juror confirmed her understanding that defendant was entitled to the presumption of innocence and that the People had the burden to prove his guilt beyond a reasonable doubt, and she agreed that she would set aside her personal views to render an impartial verdict based on the evidence presented. Under these circumstances, we cannot say that the court abused its discretion in denying defendant's for-cause challenge (see People v Shulman, 6 NY3d at 28; People v Chambers, 97 NY2d 417, 418-419 [2002]; compare People v Blyden, 55 NY2d 73, 78-79 [1982]).
Defendant's assertion that Supreme Court erred in allowing the People to admit a redacted transcript of defendant's suppression hearing testimony is unpreserved for our review, as he failed to object to its admission (see People v Jenne, 224 AD3d 953, 956 [3d Dept 2024], lv denied 42 NY3d 927 [2024]; People v Rosa, 206 AD3d 1253, 1259 [3d Dept 2022], lv denied 39 NY3d 964 [2022]). Defendant's contention that statements made during the [*10]prosecutor's summation amounted to misconduct is also unpreserved, as defendant failed to object or move for a mistrial; in any event, such statements were not so egregious that they deprived defendant of a fair trial (see People v Graham, 215 AD3d at 1008-1009; People v Hartle, 159 AD3d 1149, 1153-1154 [3d Dept 2018], lv denied 31 NY3d 1082 [2018]; People v Guay, 72 AD3d 1201, 1203-1204 [3d Dept 2010], affd 18 NY3d 16 [2011]; compare People v Rupnarine, 140 AD3d 1204, 1205 [3d Dept 2016]).[FN14]
We also reject defendant's argument that counsel was ineffective throughout the trial. To succeed on an ineffective assistance claim, a "defendant must demonstrate that counsel failed to provide meaningful representation, based on the totality of the circumstances, and the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Pratt, 162 AD3d 1202, 1203 [3d Dept 2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 940 [2018]; see People v Agan, 207 AD3d 861, 870 [3d Dept 2022], lvs denied 38 NY3d 1186 [2022], 39 NY3d 939 [2022]). Defendant did not satisfy this burden, as many of the alleged deficiencies, such as counsel's alleged under-utilization of the surveillance video and the scope of cross-examination of certain witnesses, simply amount to "disagreement[s] with strategies, tactics or the scope of possible cross-examination" (People v Flores, 84 NY2d 184, 187 [1994]). To the extent that defendant's other claims rely on matters outside the record, they would more properly be addressed through a CPL article 440 motion (see People v Tarver, 202 AD3d 1368, 1369 [3d Dept 2022], lv denied 39 NY3d 1114 [2023]; People v Rodriguez, 195 AD3d 1237, 1242 [3d Dept 2021], lv denied 37 NY3d 1061 [2021]). Overall, the record on appeal reflects that defense counsel advocated for a justification defense, vigorously cross-examined the prosecution's witnesses and otherwise pursued a rational, though unsuccessful, trial strategy and, as such, we are satisfied that defendant received meaningful representation (see People v Starnes, 206 AD3d 1133, 1143 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]; People v Slivienski, 204 AD3d 1228, 1240 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]).
Lastly, defendant argues that the sentence imposed by Supreme Court was unduly harsh and excessive. Defendant's conviction for assault in the first degree, a class B violent felony, was subject to a determinate prison sentence between 5 and 25 years, while his conviction for attempted assault in the first degree, a class C violent felony, required a prison sentence between 3½ and 15 years (see Penal Law § 70.02 [3] [a]-[b]). In sentencing defendant to a 12-year prison term on the former and to a consecutive eight-year prison term on the latter, Supreme Court considered defendant's criminal record, which consisted of a single misdemeanor, the many letters of support from community members and the role that the victims played [*11]in the melee, and it balanced those factors with defendant's lack of remorse, the victims' statements, the presentence report and the evidence admitted throughout the trial. Among other things, the court highlighted defendant's conduct as viewed in the surveillance video and defendant's social media posts admitted at trial, which included a photograph of the second victim as well as multiple references to "stabbing political opponents." Under these circumstances, we discern no basis on which to disturb the sentence (see People v Castro,206 AD3d 1444, 1451 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]; People v Collier, 146 AD3d 1146, 1152 [3d Dept 2017], lv denied 30 NY3d 948 [2017]; see also People v Jenkins, 215 AD3d 1118, 1122-1123 [3d Dept 2023], lv denied 40 NY3d 997 [2023]). Defendant's remaining contentions, to the extent not expressly addressed herein, have been examined and found to lack merit.
Garry, P.J., Egan Jr., Pritzker and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing defendant's convictions on counts 2 and 4 of the indictment; said counts dismissed; and, as so modified, affirmed.

Footnotes

Footnote 1: Justification is not available as a defense to a charge for criminal possession of a weapon in the third degree (see People v Pons, 68 NY2d 264, 267 [1986]; People v Graham, 215 AD3d 998, 999 [3d Dept 2023], lv denied 40 NY3d 928 [2023]; People v Townsend, 94 AD3d 1330, 1331 [3d Dept 2012], lv denied 19 NY3d 1105 [2012]).

Footnote 2: "The use of a knife during a fight constitutes deadly physical force as a matter of law" (People v Hernandez, 165 AD3d 1473, 1480 n 3 [3d Dept 2018] [internal quotation marks, brackets and citation omitted]; see Penal Law § 10.00 [11]; People v Signor, 173 AD3d 1264, 1265 n [3d Dept 2019]; People v Harden, 134 AD3d 1160, 1164 n 2 [3d Dept 2015], lv denied 27 NY3d 1133 [2016]).

Footnote 3: The first victim's brother faced criminal charges for his use of the taser.
Footnote 4: The video evidence was comprised of surveillance video from the Capitol's exterior, video from body cameras worn by law enforcement officers at the scene, video from street cameras in the vicinity of the Capitol and a video compilation created using footage from those video sources.
Footnote 5: Law enforcement restored order less than one minute after defendant's friend was tased.

Footnote 6: Defendant's convictions for attempted assault in the first degree under count 2 of the indictment and assault in the second degree under count 4 are lesser included counts of his convictions for assault in the first degree under count 1 and attempted assault in the first degree under count 3, respectively (see People v Cantie, 229 AD3d 465, 467 [2d Dept 2024], lv denied 42 NY3d 1035 [2024]; People v Harris, 186 AD3d 907, 912 [3d Dept 2020], lv denied 36 NY3d 1120 [2021]). Supreme Court did not sentence defendant on the lesser counts, as it recognized that they were "subsumed" by the convictions on the greater counts. However, the court should have dismissed the convictions on the lesser counts by operation of law (see CPL 300.40 [3] [b]). Thus, although not raised by the parties, the judgment must be modified to dismiss the convictions on those lesser counts (see People v Lancaster, 143 AD3d 1046, 1053 [3d Dept 2016], lv denied 28 NY3d 1147 [2017]; People v Robinson, 117 AD3d 1099, 1101 [3d Dept 2014], lv denied 23 NY3d 1066 [2014]).
Footnote 7: For purposes of this section, "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL 245.20 [2]).

Footnote 8: The statutory scheme now requires that a supplemental COC "detail the basis for the delayed disclosure" (CPL 245.50 [1-a], as added by L 2022, ch 56, pt UU, subpart D, § 1 [effective May 9, 2022]).

Footnote 9: The February 2021 disclosure was made to defendant's prior counsel, and it was redisclosed to defense counsel upon his appearance in April 2021. References to defense counsel throughout this decision all pertain to the latter, who represented defendant through the conclusion of the trial.
Footnote 10: Although not directly relevant to the issues on appeal, the People also disclosed additional materials, such as surveillance video from privately-owned cameras in the vicinity of the State Capitol, and they filed a supplemental COC on October 1, 2021, and another supplemental COC on October 14, 2021, both of which included a declaration that the People remained ready for trial.
Footnote 11: The record contains an email thread showing that, on July 8, 2021, the People provided defense counsel with a unique code to allow him to access and download discovery materials. The People also informed counsel that the code would expire September 6, 2021. Another email in this thread shows that defense counsel asked the People to "refresh" his access on January 24, 2022, which the People did the same day.

Footnote 12: Although one officer whose records were belatedly disclosed did testify at trial, we note that the personnel record for that officer consisted of a single traffic infraction. As traffic infractions do not constitute impeachment material, its disclosure was not required pursuant to CPL 245.20 (1) (k) (iv) (see Vehicle and Traffic Law § 155; People v James, 229 AD3d 1008, 1011 [3d Dept 2024]; People v Bush, 184 AD3d 1003, 1008 [3d Dept 2020], lv denied 35 NY3d 1093 [2020]).
Footnote 13: Following the People's oversight of the statement by the victim's brother, the record does not reflect that such omission was brought to their attention or that any additional requests were made for that particular item. Neither the People nor defendant called the victim's brother as a witness at trial or at any other stage of the proceedings. Further, once it was disclosed, defendant did not use the statement at trial.

Footnote 14: To the extent that defendant also argues that counsel's failure to object to the prosecutor's comments amounted to ineffective assistance, we note that counsel cannot be found to be ineffective for failing to pose an objection that had little to no chance of success (see e.g. People v Covington, 222 AD3d 1166, 1170-1171 [3d Dept 2023], lv denied 41 NY3d 964 [2024]; People v Sevilla-Rosales, 206 AD3d 1247, 1249-1250 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]; People v Casalino, 204 AD3d 1078, 1082 [3d Dept 2022], lv denied 38 NY3d 1070 [2022]).