People v Infinger (2021 NY Slip Op 03079)





People v Infinger


2021 NY Slip Op 03079


Decided on May 13, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 13, 2021

110446
[*1]The People of the State of New York, Respondent,
v
Dishawn Infinger, Appellant.

Calendar Date:March 17, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Reynolds Fitzgerald, JJ.

Sandra M. Colatosti, Albany, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Jaime A. Douthat of counsel), for respondent.



Lynch, J.
Appeal from a judgment of the County Court of Clinton County (Favreau, J.), rendered February 8, 2018, upon a verdict convicting defendant of the crimes of assault in the second degree, criminal possession of a weapon in the third degree and promoting prison contraband in the first degree.
In June 2016, defendant — an inmate at Clinton Correctional Facility — allegedly struck a correction officer who was attempting to perform a strip frisk after finding a scalpel-type weapon in defendant's cell. In connection therewith, defendant was charged by indictment with assault on a peace officer (count 1), assault in the second degree (count 2), criminal possession of a weapon in the third degree (count 3) and promoting prison contraband in the first degree (count 4). A jury trial ensued, during which defendant raised a justification defense. Defendant was acquitted of count 1, but otherwise convicted of the remaining charges. He was sentenced, as a second felony offender, to a prison term of six years, with five years of postrelease supervision, upon the conviction of assault in the second degree, and to prison terms of 3 to 6 years for each of the remaining convictions, to run concurrently with one another but consecutively to the sentence that defendant was presently serving. Defendant appeals.
We affirm. Defendant challenges the verdict on assault in the second degree as legally insufficient and against the weight of the evidence, asserting that the People failed to disprove his justification defense and did not establish the physical injury component of that crime. Defendant's legal sufficiency challenge is unpreserved, as he made only a generalized motion to dismiss this charge at the end of the People's case-in-chief and failed to renew his motion after the close of proof (see People v Garrand, 189 AD3d 1763, 1763 [2020]; People v Porter, 184 AD3d 1014, 1014 [2020], lv denied 35 NY3d 1069 [2020]). Nevertheless, when reviewing the weight of the evidence, "[this Court] necessarily evaluate[s] whether all elements of the charged crimes were proven beyond a reasonable doubt" (People v Garrand, 189 AD3d at 1763 [internal quotation marks and citations omitted]; see People v Kabia, 190 AD3d 1105, 1106 [2021]).
As relevant here, a person is guilty of assault in the second degree when, "[w]ith intent to prevent a peace officer
. . . from performing a lawful duty . . . he or she causes physical injury to such peace officer" (Penal Law § 120.05 [3]). Physical injury means "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). "To qualify as substantial pain within the meaning of the Penal Law, the pain must be 'more than slight or trivial,' but it 'need not . . . be severe or intense'" (People v Diaz, 163 AD3d 110, 113 [2018], lv denied 32 NY3d 1110 [2018], quoting People v Chiddick, 8 NY3d 445, 447 [2007]). Factors relevant to the inquiry include "an objective assessment of the injury sustained, the victim's subjective [*2]description of the injury and whether the victim sought any medical treatment to address [it]" (People v Diaz, 163 AD3d at 114 [internal quotation marks and citations omitted]).
With respect to the defense of justification for the use of ordinary physical force, "unless the defendant is the initial aggressor, he or she may 'use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person'" (People v Williams, 161 AD3d 1296, 1296-1297 [2018], lv denied 32 NY3d 942 [2018], quoting Penal Law § 35.15 [1]). The People bear the burden of disproving the justification defense beyond a reasonable doubt (see People v Brown, 33 NY3d 316, 321 [2019]; People v Brinkley, 174 AD3d 1159, 1161 [2019], lv denied 34 NY3d 979 [2019]; People v Every, 146 AD3d 1157, 1161 [2017], affd 29 NY3d 1103 [2017]).
At trial, correction officer Chad Stickney testified that he located a scalpel-type weapon inside of a roll of toilet paper during an authorized search of defendant's cell. After finding the contraband, Stickney placed defendant in mechanical restraints and escorted him to a secure area for a strip search. Stickney removed the restraints from defendant's wrists and ordered him to place his hands flat against the wall. According to Stickney, as he was reaching behind his back to secure the restraints on his belt, defendant "turned off the wall and punched [him] in the face with a closed fist." Stickney "returned blows in the same manner with closed fists towards [defendant's] face." Stickney explained that defendant hit him several times and "kick[ed] [him] in the mid-section and in the right knee." Ron Wood, a correction sergeant, generally corroborated Stickney's testimony about the altercation, explaining that he helped escort defendant to the secure location and that defendant spun around and struck Stickney in the face when he was attempting to perform a strip frisk. Douglas Evens, another correction officer, testified that he saw defendant "throwing fists" and "kicking towards [o]fficer Stickney" when he reported to the scene after hearing a commotion.
Following the incident, Stickney reported to the prison hospital in "minor pain" with "contusions and swelling . . . to the left side of [his] face" as well as "redness . . . and swelling to [his] knee." Stickney remained on duty but described his knee as "sore" and "stiff" after his shift ended. He acknowledged that he had knee surgery in 2002, which caused swelling and arthritis on damp or cold days. Stickney continued to work for five days before going on a previously planned vacation. He testified that his knee was "progressively getting worse" and that he was unable to return to work as previously scheduled in early July 2016. He went to the emergency room — where he did not take the [*3]pain medication that he was given — and had X rays taken, explaining that his knee pain was a "four to five" on the pain scale at that point, intermittent and "like a toothache." Stickney underwent knee replacement surgery in September 2016, enduring a "very painful" recovery. He returned to work on a full-time basis around the end of March 2017. On cross-examination, Stickney acknowledged that he had been a party to a lawsuit involving the excessive use of force on inmates, but denied the substance of the allegations and noted that he had been cleared to return to work after an internal investigation by the Attorney General's office.
An orthopedic surgeon who treated Stickney on July 28, 2016 explained that he complained of knee pain and instability that "culminated to the point where it was significantly interfering with the quality of his life and his ability to perform his job." The surgeon noted that Stickney had "multiple [prior] work-related injuries" to his knee, including an unrelated anterior cruciate ligament injury as well as meniscus damage culminating in posttraumatic arthritis. The surgeon diagnosed Stickney with an "arthritic knee with decreased range of motion," explaining that he was aware that Stickney had "an altercation" at work and the event could have caused the pain that Stickney relayed to him. The surgeon ultimately opined that Stickney's knee had been "failing for years," his pain was the culmination of several injuries and the altercation in question was the "straw that broke the camel's back."
Defendant testified on his own behalf, maintaining that he feared for his life upon entering the frisk room — which does not have cameras and is known among inmates as the "[s]laughter [h]ouse" — because he had provided information about a week prior regarding an alleged assault on another inmate at the facility. According to defendant, prior to conducting the strip search, Stickney stated, "I normally don't take the chains off my dogs before I beat [th]em, but I'm going to give you a shot." Defendant maintained that he complied when Stickney ordered him to place his hands on the wall after removing his mechanical restraints. Defendant testified that, when Stickney told him that he could take his hands down, Woods "hit [him] in [his] face," as did Stickney, and a "full-fledged brawl" broke out. According to defendant, a response team showed up and started "kicking and stomping [him]" with repeat blows to his body and face until he heard someone say "that's enough" and was dragged to the prison's hospital. A nurse at the facility testified that defendant presented to the hospital with scrapes, a bloody nose and swelling on his forehead; however, his injuries were not considered to be serious and were treated with minor first aid.
On this record, a different verdict would not have been unreasonable in light of the conflicting testimony as to whether defendant was the initial aggressor. Nevertheless, when viewing the [*4]evidence in a neutral light and deferring to the jury's credibility determinations, we conclude that the verdict on his assault in the second degree conviction is not against the weight of the evidence. Even assuming that Stickney's arthritis was partially attributable to his prior knee injuries, the People sufficiently established the requisite element of causation to support the conviction (see People v Hunt, 13 AD3d 160, 160-161 [2004], lv denied 4 NY3d 831 [2005]; see generally Matter of Anthony M., 63 NY2d 270, 280 [1984]). Moreover, although Stickney testified that he was only in "minor pain" immediately following the incident, the evidence that Stickney was unable to return to work after his vacation due to knee pain, sought medical treatment several weeks later, underwent knee replacement surgery and was out of work for several months amply supports the jury's finding that he suffered a physical injury within the meaning of Penal Law § 10.00 (9) (see People v Hodge, 83 AD3d 594, 595 [2011], lv denied 17 NY3d 859 [2011]). The jury's rejection of defendant's justification defense was also not against the weight of the evidence (see Penal Law § 35.15 [1] [b]; People v Harris, 186 AD3d 907, 910 [2020]; People v Harden, 134 AD3d 1160, 1164 [2015], lv denied 27 NY3d 1133 [2016]). Two correction officers independently testified that defendant was the initial aggressor, and the jury could reasonably discredit defendant's version of the events, particularly since his description of the officers' conduct conflicted with the minor nature of his injuries (see People v Chappell, 187 AD3d 1319, 1324 [2020]; People v Every, 146 AD3d at 1161). We defer to the jury's credibility assessments in these circumstances (see People v Harris, 186 AD3d at 910; People v Every, 146 AD3d at 1162).
Defendant further contends that County Court abused its discretion regarding the manner in which it responded to a jury note seeking clarification on the charge of assault in the second degree. Although defendant recognizes that his argument is unpreserved, he asks this Court to take corrective action in the interest of justice. Alternatively, he asserts that counsel's failure to object deprived him of meaningful representation. We are unpersuaded as to both arguments. Following the charge conference, County Court gave the jury the justification charge as it related to counts 1 and 2 of the indictment, explaining that the jury "must find . . . defendant not guilty of the first two counts" if it found that the People "failed to prove beyond a reasonable doubt that defendant was not justified" in using physical force. During deliberations, the jury submitted a note stating that it was unable to reach a unanimous decision regarding assault in the second degree and requesting that the court "provide clarification" on that count "as described by the law." County Court consulted with both parties as to how to proceed and they agreed that the court should reread the charge [*5]of assault in the second degree. Although defense counsel did not make a specific request that the jury be reinstructed on the justification defense, he asked the court to read the instructions provided on the verdict sheet, which included a statement that the jury could not consider count 2 if it acquitted defendant of count 1 on the ground that the People did not disprove his justification defense beyond a reasonable doubt. The court reread the charge on assault in the second degree, reminded the jury to submit another note if it needed further clarification, and specifically "refer[red] [the jury] to the verdict sheet again if [it] need[ed] clarification in terms of taking up . . . count [2] of the indictment." In these circumstances, County Court did not abuse its discretion in the manner in which it responded to the jury note, and no cause exists to take corrective action in the interest of justice (see generally People v Almodovar, 62 NY2d 126, 131 [1984]). Nor has defendant established that he was deprived of meaningful representation with respect to counsel's advocacy on this issue (see People v Snow, 170 AD3d 1276, 1278 [2019], lv denied 33 NY3d 1035 [2019]; People v Bekka, 159 AD3d 578, 578 [2018], lv denied 31 NY3d 1078 [2018]).
We further reject defendant's argument that the sentence imposed is harsh and excessive. Notwithstanding certain mitigating factors, defendant has a prior criminal history for serious crimes spanning multiple jurisdictions. In light of this prior criminal history, coupled with statements that he made to a probation officer during the presentence investigation interview, we discern no abuse of discretion or extraordinary circumstances that would warrant a reduction of the sentence in the interest of justice (see People v Crippen, 156 AD3d 946, 953 [2017]; People v Humphrey, 13 AD3d 815, 816 [2004], lv denied 4 NY3d 799 [2005]). We do, however, find it appropriate to correct two errors in the presentence investigation report, which erroneously described assault in the second degree as a class A felony and stated that defendant had three (rather than two) prior felony convictions. Defense counsel highlighted these errors during the sentencing proceeding and "[f]ailing to redact erroneous information from the [presentence investigation report] create[s] an unjustifiable risk of future adverse effects to defendant in other contexts" (People v Freeman, 67 AD3d 1202, 1203 [2009]; compare People v Taylor, 118 AD3d 1044, 1048 [2014], lv denied 23 NY3d 1043 [2014]).
Egan Jr., J.P., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, and the County Court of Clinton County is directed to correct the presentence investigation report in the manner described herein.