People v Hines (2023 NY Slip Op 01323)

People v Hines

2023 NY Slip Op 01323

Decided on March 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 16, 2023

112066
[*1]The People of the State of New York, Respondent,
v
Ricky Hines, Appellant.

Calendar Date:January 9, 2023

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Theodore J. Stein, Woodstock, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Peter A. Lynch, J.), rendered April 29, 2019 in Albany County, upon a verdict convicting defendant of the crime of robbery in the second degree.
Defendant was charged by indictment with robbery in the first degree stemming from an armed robbery that occurred at M & T Bank in the City of Albany on April 25, 2018. Defendant was subsequently convicted, after a jury trial, of robbery in the second degree and was sentenced, as a persistent violent felony offender, to a prison term of 16 years to life. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence because, despite being apprehended with the currency stolen from the bank on his person, the People failed to establish that he was the individual who robbed the bank. As relevant here, "[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when[,] . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he [or she] . . . [d]isplays what appears to be a pistol, revolver . . . or other firearm" (Penal Law § 160.10 [2] [b]).
At trial, a former employee of the bank testified as to the events of April 25, 2018. She explained that she was working as a teller when the perpetrator entered the bank through the front door, pointed a gun at her and stated, "[g]ive me all the money. No dye bags." The former employee began to do so when the perpetrator jumped the bank counter and took money from the drawer. He then hopped back over the counter and left the bank via the front door. Bank employees then locked the front door and called the police, who responded quickly. The former employee described the perpetrator as a short, Black male wearing dark clothing and a white mask covering his forehead. She also testified that the perpetrator took bait money, which looks like real money on the outside and has a GPS sewn in the middle. Subsequent testimony demonstrated that the GPS tracker activated when the bait money was removed from the drawer, at approximately 9:50 a.m. The People admitted into evidence photographs from the bank's security system, which showed images of the perpetrator.[FN1] Michael Adams, a police officer for the City of Albany Police Department, testified that on April 25, 2018, while on patrol duty, he and his partner received information from dispatch about a bank robbery and GPS location of where the tracker was last observed. At one point he was given a description of the suspect and an updated location of Swinburne Park. At the park, he observed a man walking on a pathway who matched the description given to them of the suspect. He and his partner ordered the man to get on the ground and took him into custody. Adams testified that they did remove money [FN2]
and a BB gun from the suspect. Adams identified the person they took into custody as defendant.[FN3]

Testimony at trial demonstrated that law [*2]enforcement, using security cameras around the area of the robbery, took note of a U-Haul van that was closely following the GPS tracking inside of the bait money. Ultimately the U-Haul was located within the vicinity of Swinburne Park. Items recovered from the U-Haul included dollar bills, a white mask, a black hat, a black ski mask and a cell phone. DNA swabs from the steering wheel and a buccal swab from defendant to be used as a control sample were also collected. Testimony from a forensic scientist from the State Police Forensic Investigation Center demonstrated that DNA testing from the black hat and the face mask had three possible contributors, one of whom is defendant, and DNA from the steering wheel of the U-Haul was consistent with two donors, with defendant's DNA being identified as a major contributor to the sample. Also, a latent print examiner testified that fingerprints taken from the cell phone matched defendant's fingerprints. Additionally, regarding the U-Haul, a friend of defendant testified that on April 9, 2018, she rented a U-Haul for defendant in order for him to move. She stated that the day after she rented it for him, he left with it on his own.
Given the foregoing, "when construing the evidence in the light most favorable to the People as we must, a rational person could conclude that the [perpetrator's] identity was sufficiently proven to be defendant" (People v Slivienski, 204 AD3d 1228, 1234 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]; see People v Quinn, 210 AD3d 1284, 1285 [3d Dept 2022]). To that end, the People presented the testimony of the bank teller, who established that someone matching the description of defendant displayed an item that could be perceived as a gun, which compelled her to give him the money from her cash drawer (see Penal Law § 160.10; People v Jones, 202 AD3d 1285, 1287 [3d Dept 2022]). Additionally, photographs of items from the U-Haul, the GPS tracker and items found on defendant at the time of arrest evince a conclusion that was reasonable for the jury to draw that defendant was the person who robbed the bank at gun point. As to the weight of the evidence, although a different verdict would not have been unreasonable given the lack of physical evidence such as fingerprints at the bank, "when viewing all of the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the weight of the credible evidence supports the conclusion that defendant" was the perpetrator who robbed the bank (People v Slivienski, 204 AD3d at 1235; see People v Noel, 207 AD3d 956, 958 [3d Dept 2022], lv denied 39 NY3d 941 [2022]). Thus, the verdict is supported by legally sufficient evidence as well as the weight of the evidence.
Defendant contends that Supreme Court erred when it failed to grant his motion for a trial order of dismissal shortly before concluding that the appropriate charge was robbery in the second degree, not in the first degree as was charged in the indictment[*3]. This argument lacks merit because the determination of the appropriate degree was not an independent decision of the court rendered incident to denying the trial order of dismissal. Instead, during the charge conference, the People agreed to submit the lesser included charge of robbery in the second degree to the jury. Further, the court did not employ the incorrect standard when denying defendant's motion for a trial order of dismissal as, pursuant to CPL 290.10, a trial order of dismissal is properly granted and an indictment dismissed when the trial evidence is legally insufficient to establish the offense charged or any lesser included offense; here, the evidence supported a lesser included offense (see CPL 290.10 [1] [a]).
Defendant also contends that he was denied the effective assistance of counsel based upon two alleged failings: (1) statements made by defense counsel in his opening statement and closing argument that, if defendant was guilty of anything, he was guilty of criminal possession of stolen property, and (2) not carefully reviewing defendant's criminal history such that he did not contest information provided by the People relative to defendant's status as a persistent violent felony offender. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Bowen, 185 AD3d 1219, 1221 [3d Dept 2020] [internal quotation marks and citations omitted]).
Viewing counsel's representation in its totality, defendant was provided the effective assistance of counsel. As to counsel's statements that, if defendant was guilty of anything, he was guilty of criminal possession of stolen property, defendant did not provide evidence that defense counsel's actions were not strategic. Although counsel did state that defendant was found with a weapon and a money pack, this was to advance the theory that there were other ways, beyond robbing the bank, that defendant could have obtained these items. It was a strategic choice of counsel to address the facts that were adverse to defendant, especially given the uncontested testimony of two of the police officers who were present when defendant was apprehended and testified to those items that were on his person. Regarding the assertion that counsel did not properly advocate for defendant during sentencing, counsel informed Supreme Court, when asked whether counsel had reviewed the accuracy of the presentence report with defendant, that he attempted to review it with defendant but that defendant did not wish to speak to counsel about it. He further stated that on his own review he did not see any factual discrepancies. After being asked if defendant disputed the charging of the predicate offense, defense counsel again reported to the court that defendant refused to talk to him about [*4]this. Without defendant's cooperation, counsel did not have a basis to object to the determination that defendant was a persistent violent felony offender. "Viewing counsel's performance in its totality, including filing an omnibus motion, effectively cross-examining . . . [the People's] witnesses, making relevant objections and delivering cogent opening and closing statements, defendant received meaningful representation" (People v Green, 208 AD3d 1539, 1546 [3d Dept 2022] [citations omitted]; see People v Turner, 207 AD3d 889, 892 [3d Dept 2022], lv denied 38 NY3d 1190 [2022]).
Defendant also argues that he was wrongly sentenced as a persistent violent felony offender based upon the assertion that, in the time frame to be considered, he had only one other felony conviction and therefore should not have been considered a persistent violent felony offender. This issue is not preserved as defendant failed to challenge his status as a persistent violent felony offender at sentencing (see People v Walker, 189 AD3d 1619, 1620 [2d Dept 2020], lv dismissed 37 NY3d 975 [2021]; People v Ortiz, 155 AD3d 1241, 1241 [3d Dept 2017]). Were we to address this argument, despite the lack of preservation, we would find it lacking in merit (see People v Ortiz, 155 AD3d at 1242; People v Leszczynski, 96 AD3d 1162, 1164 [3d Dept 2012], lv denied 19 NY3d 998 [2012]). To the extent defendant is arguing that the imposed sentence of 16 years to life is harsh and excessive, this assertion is without merit inasmuch as the term imposed by the court was the minimum permissible (see Penal Law §§ 70.08 [2], [3] [b]; People v Cooper, 199 AD3d 1061, 1064 [3d Dept 2021], lv denied 38 NY3d 926 [2022]; People v Duggins, 161 AD3d 1445, 1447 [3d Dept 2018], lv denied 32 NY3d 937 [2018]).
Egan Jr., J.P., Clark, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: In the photographs, the perpetrator appears to be wearing a white face mask with a yellow strap on his forehead.

Footnote 2:Other evidence admitted at trial included a photograph of one of the stacks of money recovered from defendant, which contained the GPS tracker.

Footnote 3:Another police officer, who responded to Swinburne Park, also identified defendant as the perpetrator taken into custody.