People v Alexander (2024 NY Slip Op 05160)

People v Alexander

2024 NY Slip Op 05160

Decided on October 17, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 17, 2024

113183
[*1]The People of the State of New York, Respondent,
v
Charles A. Alexander, Appellant.

Calendar Date:September 10, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, McShan and Powers, JJ.

John A. Cirando, Syracuse, for appellant.
Mary E. Saitta, Special Prosecutor, Binghamton, for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Broome County (Kevin P. Dooley, J.), rendered October 26, 2021, upon a verdict convicting defendant of the crime of burglary in the third degree.
Defendant was convicted, after a jury trial, of one count of burglary in the third degree stemming from an incident wherein he unlawfully entered an apartment building in the City of Binghamton, Broome County with the intent to commit a larceny. County Court sentenced defendant, as a second felony offender, to a prison term of 3½ to 7 years. Defendant appeals.
Defendant argues that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence because the People failed to provide sufficient evidence to identify defendant beyond a reasonable doubt. As is relevant here, "[a] person is guilty of burglary in the third degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). "[A]s an implicit but necessary element of each and every crime, the People must prove beyond a reasonable doubt the identity of the defendant as the person who committed the crime" (People v Shabazz, 211 AD3d 1093, 1095 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1113 [2023]).
The victim testified that on February 17, 2021, she received notifications that three packages had been delivered to her apartment. However, when she returned home to the apartment building that evening around 7:45 p.m., her packages were missing from the lobby. She messaged the building manager to inform him of this. The building manager testified that the main entrance to the building is the front door which features a "paddle latch" lock that requires a metal key to unlock it. After he had received an email from the victim about her missing packages, he went to the building to check to see if the front door was still working and review the security footage. In reviewing the footage,[FN1] he observed that between 6:30 p.m. and 7:00 p.m., a male individual entered the front door, rummaged through the packages stacked inside the foyer and put some packages in his backpack. The building manager also observed that the individual used a knife to break the latch on the door to let himself in. He could not identify the individual who took the packages but was able to determine that the individual did not reside at the apartment building. An officer with the Binghamton Police Department responded to the scene soon after and observed that the front door locking mechanism, which required a key, was not properly functioning at the time because a screw had been removed or damaged. She also observed scratches on the lock.
Jonathan Kellar, a police officer with the Binghamton Police Department, who was familiar with defendant, testified that he reviewed the security footage from the apartment building and recognized defendant, who has a "strong jawline," as the individual in [*2]the video. Kellar also testified that he "could see [defendant's] face in this surveillance, also has the same characteristics as far as height and weight, so [the officer] knew for a hundred percent fact that it was [defendant]." A few weeks later, while sitting in his patrol car, Kellar observed defendant walking down the street. Kellar reviewed the security footage again and observed that defendant was "wearing a black leather jacket, gray hooded sweatshirt underneath, and a black baseball hat, like a flat brim baseball hat with a yellow circular sticker on the top of the brim," which matched the clothes that the individual was wearing in the security footage. During a subsequent encounter with defendant, Kellar located a pocketknife in defendant's pants pocket.[FN2]
"Based on the foregoing, when construing the evidence in the light most favorable to the People as we must, a rational person could conclude that the [perpetrator's] identity was sufficiently proven to be defendant" (People v Slivienski, 204 AD3d 1228, 1234 [3d Dept 2022] [citations omitted], lv denied 38 NY3d 1136 [2022]; accord People v Montgomery, 229 AD3d 899, 903 [3d Dept 2024]; see People v Brown, 145 AD3d 1549, 1550 [4th Dept 2016], lv denied 29 NY3d 947 [2017]; People v Williams, 46 AD3d 1024, 1026 [3d Dept 2007]). Additionally, "[d]efendant's intent to commit a crime when he entered the building could also readily be inferred by the circumstances of his entry and his actions once inside" (People v Thomas, 203 AD3d 634, 635 [1st Dept 2022] [citation omitted], lv denied 38 NY3d 1136 [2022]; see People v Oliveras, 203 AD3d 1233, 1237-1238 [3d Dept 2022], lv denied 38 NY3d 1073 [2022]). "As to the weight of the evidence, although a different verdict would not have been unreasonable, when viewing all of the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the weight of the credible evidence supports the conclusion that defendant was the [perpetrator]" (People v Slivienski, 204 AD3d at 1235 [citations omitted]; see People v Kilgore, 218 AD3d 1054, 1056 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]; People v Hines, 214 AD3d 1117, 1119 [3d Dept 2023], lv denied 39 NY3d 1155 [2023]).
Defendant also argues that County Court erred in declining to give a cross-racial identification jury instruction based upon Kellar's identification testimony as requested. We agree. As held by the Court of Appeals in People v Boone (30 NY3d 521 [2017]), "when identification is an issue in a criminal case and the identifying witness and defendant appear to be of different races, upon request, a party is entitled to a charge on cross-racial identification" (id. at 526 [emphasis added]; see People v Watkins, ___ NY3d___, ___, 2024 NY Slip Op 02842, *4-*5 [2024]). Here, at the close of proof, defendant requested that the jury be given a cross-racial identification instruction pursuant to Boone. County Court denied his request noting, among other things, that in [*3]the present case, the identifying witness, Kellar, knew defendant. County Court, however, misinterpreted the Boone standard and erred in denying defendant's request for a cross-racial identification jury instruction upon defendant's request for same (30 NY3d at 535; see People v Watkins, 2024 NY Slip Op 02842 at *4-*5; People v Boyd, 184 AD3d 1151, 1153-1154 [4th Dept 2020]; People v Jiggetts, 168 AD3d 507, 508 [1st Dept 2019], lv denied 33 NY3d 977 [2019]; People v Bradley, 160 AD3d 760, 761-762 [2d Dept 2018], lv denied 31 NY3d 1115 [2018]; compare People v Bailey, 201 AD3d 601, 602 [1st Dept 2022], lv denied 38 NY3d 1069 [2022]).
We do not find the error to be harmless. "[U]nless the proof of . . . defendant's guilt, without reference to the error, is overwhelming, there is no occasion for consideration of any doctrine of harmless error" (People v Crimmins, 36 NY2d 230, 241 [1975]; see People v Mosley, 41 NY3d 640, 652-653 [2024]; People v Hansel, 200 AD3d 1327, 1331 [3d Dept 2021], lv denied 38 NY3d 927 [2022]). Here, without Kellar's identification testimony, the jury would have been tasked with identifying defendant from fleeting glances of his face, or at least the portion of his face able to be seen under his baseball hat, in the surveillance video. In fact, as conceded by the People at oral argument, it was because defendant had "disquised himself in a way" and was not looking at the camera that the jury may have needed some assistance in identifying defendant and thus they sought to admit Kellar's identification testimony. Although the People put in evidence that when defendant was arrested, weeks later, he was wearing similar clothing and in possession of a similar knife, we find that the identity evidence was not overwhelming (compare People v Boyd, 184 AD3d at 1153-1154; People v Jiggetts, 168 AD3d at 508; People v Bradley, 160 AD3d at 762). As such, "the error thus cannot be deemed harmless and requires reversal for a new trial" (People v Mosley, 41 NY3d at 653; see also People v Crimmins, 36 NY2d at 241). In light of this determination, defendant's remaining argument is rendered academic.
Egan Jr., J.P., Lynch, McShan and Powers, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Broome County for a new trial.

Footnotes

Footnote 1: The security footage was admitted into evidence.

Footnote 2: The black hat, pocketknife, gray hoodie and black leather jacket recovered from defendant were entered into evidence as People's exhibits.