People v Brooks (2024 NY Slip Op 06626)

People v Brooks

2024 NY Slip Op 06626

Decided on December 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 26, 2024

112639
[*1]The People of the State of New York, Respondent,
v
Lontez Brooks, Appellant.

Calendar Date:November 19, 2024

Before:Aarons, J.P., Reynolds Fitzgerald, Ceresia, McShan and Mackey, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Lora J. Tryon of counsel), for appellant.
Gary M. Pasqua, District Attorney, Canton (Dillon K. Bullard of counsel), for respondent.

Mackey, J.
Appeal from a judgment of the County Court of St. Lawrence County (Kelly S. McKeighan, J.), rendered September 9, 2020, convicting defendant following a nonjury trial of the crime of assault in the second degree (two counts).
Defendant, an incarcerated individual at a correctional facility, allegedly struck a correction officer, causing him physical injury. As a result, defendant was charged by indictment with two counts of assault in the second degree (see Penal Law § 120.05 [3], [7]). Following a bench trial, County Court found defendant guilty as charged. He was thereafter sentenced, as a second violent felony offender, to a prison term of five years, to be followed by five years of postrelease supervision, on each count, to be served concurrently. Defendant appeals. We affirm.
Defendant contends that the verdict is against the weight of the evidence, including that the People failed to disprove his justification defense beyond a reasonable doubt. "When undertaking a weight of the evidence review, [this Court] must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable" (People v Fisher, 221 AD3d 1355, 1356 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1092 [2024]; see People v Lewis, 224 AD3d 1143, 1144 [3d Dept 2024], lv denied 42 NY3d 939 [2024]). Where a different finding would not have been unreasonable, the Court must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Myers, 163 AD3d 1152, 1153 [3d Dept 2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 1066 [2018]; see People v Place, 152 AD3d 976, 977 [3d Dept 2017], lv denied 30 NY3d 1063 [2017]). In the course of this review, "great deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Crosby, 151 AD3d 1184, 1185 [3d Dept 2017] [internal quotation marks and citations omitted]; see People v Lekovic, 200 AD3d 1501, 1504 [3d Dept 2021], lv denied 38 NY3d 1008 [2022]).
As charged here, a person is guilty of assault in the second degree when, "[w]ith intent to prevent a peace officer . . . from performing a lawful duty . . . , he or she causes physical injury to such peace officer" (Penal Law § 120.05 [3]; see People v Infinger, 194 AD3d 1183, 1184 [3d Dept 2021], lv denied 37 NY3d 965 [2021]). A person is also guilty of assault in the second degree when, "[h]aving been charged with or convicted of a crime and while confined in a correctional facility, . . . with intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person" (Penal Law § 120.05 [7]). The element of intent can be inferred from the circumstances (see People v Fisher, 221 AD3d at 1358; People v Green, 190 AD3d 1094, 1097 [3d Dept 2021], lv denied 36 NY3d 1097 [2021]). "[*2]With respect to the defense of justification for the use of ordinary physical force, unless the defendant is the initial aggressor, he or she may use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person" (People v Infinger, 194 AD3d at 1184 [internal quotation marks and citations omitted]). The People bear the burden of disproving the justification defense beyond a reasonable doubt (see Penal Law § 25.00 [1]; People v Brown, 33 NY3d 316, 321 [2019]; People v Brinkley, 174 AD3d 1159, 1161 [3d Dept 2019], lv denied 34 NY3d 979 [2019]; People v Every, 146 AD3d 1157, 1161 [3d Dept 2017], affd 29 NY3d 1103 [2017]).
At trial, the victim testified that on the day of the incident, he was conducting routine pat frisks of people leaving the mess hall. After defendant had been frisked, he asked for permission to return to the mess hall to retrieve his sweatshirt. When defendant went to leave the second time, the victim asked him to submit to another pat frisk. The victim testified that defendant then became agitated and refused, so he then ordered defendant to produce his identification card to write a misbehavior report. According to the victim, defendant refused this request and he then ordered defendant to leave the room, to "de-escalate the situation," but informed defendant he would still be writing a misbehavior report. The victim testified that defendant then struck him multiple times in and about the face, breaking his glasses and cutting him above the eye. The victim fought back, taking defendant to the floor, and activated his personal alarm system to call out for assistance. Other correction officers arrived and helped subdue defendant. Two correction officers generally corroborated the victim's testimony about the altercation. Both witnesses testified that they were alerted by their personal alarms to the altercation and when they arrived, they found the victim and defendant on the floor where the victim was attempting to get defendant to comply. Both witnesses denied that any correction officer punched or stomped on defendant while he was on the floor. Following the incident, the victim was taken to the infirmary and then to the local hospital, where he was treated for the injuries he sustained in the incident, including a laceration over his left eye, abrasions to his right hand and broken bones in his left thumb. He returned to work after 12 weeks.
Defendant testified on his own behalf. According to defendant, after receiving permission to retrieve his sweatshirt from the mess hall, he let out a large yawn which the victim took as a sign of disrespect, leading him to call defendant back for a second pat frisk. Defendant testified that while he submitted to the second pat frisk, the victim inexplicably started a verbal altercation[*3], which escalated to a physical one when the victim put his hands on defendant's collar, grabbed his neck and began slapping him. Defendant maintained that he also complied with the victim's request to produce his identification but when he asked for it back, the victim began slapping him. It was at this point that defendant was forced to defend himself by striking the victim. Defendant also recalled being taken to the ground by another correction officer and was punched with closed fists and slapped across the face by this correction officer and the victim. Defendant denied starting the fight and striking the victim first. He stated that he only attacked because he was afraid of another slap or punch. He also testified that he sustained some bruising by his right eye, a small knot and a slight bit of swelling on his face.
On this record, a different verdict would not have been unreasonable, in light of the conflicting testimony as to whether defendant was the initial aggressor. Nevertheless, when viewing the evidence in a neutral light, including defendant's claim of self-defense, we conclude that the verdict is not against the weight of the evidence (see Penal Law § 35.15 [1] [b]; People v Bleakley,69 NY2d 490, 495 [1987]; People v Infinger,194 AD3d at 1187; People v Harris, 186 AD3d 907, 910 [3d Dept 2020], lv denied 36 NY3d 1120 [2021]; People v Ford, 156 AD3d 1242, 1244 [3d Dept 2017], lv denied 31 NY3d 1013 [2018]). Although defendant argues that the victim's account of what transpired was not believable, any discrepancies in the victim's testimony were explored at trial and "posed credibility questions for the [trier of fact] to resolve" (People v Malak, 117 AD3d 1170, 1174 [3d Dept 2014], lv denied 24 NY3d 1086 [2014]; accord People v Wells, 141 AD3d 1013, 1023 [3d Dept 2016], lv denied 28 NY3d 1189 [2017]; see People v Bautista, 147 AD3d 1214, 1216 [3d Dept 2017]).
Finally, defendant's challenge to the procedure used to adjudicate him a second violent felony offender (see CPL 400.15) is unpreserved for our review (see People v Samms, 95 NY2d 52, 55-56 [2000]; People v Hines, 214 AD3d 1117, 1121 [3d Dept 2023], lv denied 39 NY3d 1155 [2023]; People v Hernandez, 188 AD3d 1357, 1359 [3d Dept 2020], lv denied 36 NY3d 1057 [2021]). In any event, defendant's contention is without merit, as the record reflects compliance with the requirements of CPL 400.15 (see People v Bouyea, 64 NY2d 1140, 1142-1143 [1985]; People v Quinones, 162 AD3d 1402, 1403 [3d Dept 2018]; People v Brown, 74 AD3d 1637, 1638 [3d Dept 2010], lv denied 15 NY3d 850 [2010]).
Aarons, J.P., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is affirmed.